AMERICAN CAPITAL CORPORATION
and Transcapital Financial
Corporation, Plaintiffs,

and

Federal Deposit Insurance Corporation, as
Successor to the Rights of the Transohio
Savings Bank, Plaintiff–Intervenor,

v.

The UNITED STATES, Defendant.

No. 95–523C.

United States Court of Federal Claims.

Filed April 16, 2004.

Corrected Version Filed April 20, 2004.

Charles J. Cooper, Vincent J. Colatriano, and Hamish P.M. Hume, Washington, D.C., for plaintiffs.

Andrew Charles Gilbert, Washington, D.C., for plaintiff-intervenor, Federal Deposit Insurance Corporation.

Jane Margaret Ellen Peterson, Washington, D.C., for defendant, United States Department of Justice.

## MEMORANDUM OPINION AND ORDER REGARDING PENDING MOTIONS FILED BY THE FEDERAL DEPOSIT INSURANCE CORPORATION [1]

BRADEN, Judge.

On June 5, 2003, the Federal Deposit Insurance Corporation ("FDIC"), plaintiff-intervenor, filed a Motion for Partial Summary Judgment and Opposition to Shareholders' Motion for Partial Summary Judgment on Damages ("FDIC Mot. Re. Damages"). The FDIC agreed with plaintiffs' argument that the Government was liable under a restitution theory for the net equity value of Transohio Savings Bank, FSB ("Transohio Savings") "immediately prior to entry into its goodwill contract[.]" *Id.* at 2. The FDIC, however, disputed plaintiffs' right to assert that claim, since the FDIC is the legal successor-in-interest to Transohio Savings. *Id.;* *see also* FDIC's October 20, 2000 Motion for Partial Summary Judgment on Liability ("FDIC's Mot. P.S.J. on Liability") at 6 (citing 12 U.S.C. § 1821(d)(2)(A)(i) and § 1441(a)(b)(4)(A) (the Resolution Trust Corporation ("RTC") as Receiver succeeded to

---

1. The relevant background and procedural history of this case to date are set forth in *American Capital Corp. v. United States,* 58 Fed.Cl. 398

(2003) (*"American Capital I"*) and *American Capital Corp. v. United States,* 59 Fed.Cl. 563 (2004) (*"American Capital II"*).

"all rights, titles, powers, and privileges of [Transohio Savings], and of any stockholder ... of [Transohio Savings] with respect to [Transohio Savings] and the assets of [Transohio Savings].")).

On September 16, 1994, the RTC became the Receiver of Transohio Savings. *See* FDIC Exhibit 17 (App. at 217). On December 31, 1995, the RTC's functions were assumed by the Federal Savings and Loan Insurance Corporation ("FSLIC") Resolution Fund–RTC, which is managed by the FDIC. *See* 12 U.S.C. § 1441a(m)(2); 12 U.S.C. § 1821a (a)(4); 12 U.S.C. § 1823(d)(2) and 3(A)(B). Therefore, as a matter of law, the FDIC asserts it is the only party with standing to pursue any claims that Transohio Savings may have in this case.

On October 31, 2003, the court issued a Memorandum Opinion and Order granting, in substantial part, an October 10, 2000 motion for partial summary judgment filed by American Capital Corporation and Transcapital Financial Corporation (collectively "plaintiffs") because an August 29, 1986 Assistance Agreement between plaintiffs and the FSLIC, incorporating by reference an August 21, 1996 Federal Home Loan Bank Board ("FHLBB") Resolution No. 86–864, created a valid and enforceable contract. *See American Capital I*, 58 Fed.Cl. at 401, 408–09. The court also ruled that contract was breached by the Office of Thrift Supervision ("OTS"), the successor agency to the FHLBB, at least as early as December 7, 1989, when OTS issued final regulations implementing far more stringent regulatory capital requirements and standards than those set forth in the terms of the FHLBB Resolution No. 86–864 and the Assistance Agreement issued in reliance thereof. *Id.*

Therefore, since the FDIC's October 20, 2000 Motion for Partial Summary Judgment on Liability relied on the same legal arguments, regarding liability as plaintiffs, the FDIC's motion in this respect is now moot and hereby is dismissed.

On February 27, 2004, the court also issued a Memorandum Opinion and Order granting plaintiffs' August 31, 2001 motion for partial summary judgment regarding damages. *See American Capital II*, 59 Fed. Cl. at 589. Specifically, the court held that plaintiff Transcapital Financial Corporation ("TFC") was entitled to recover its "essential reliance" interest, in the amount of the equity value of Transohio Savings stock, as of August 29, 1986, the date that the Assistance Agreement was signed. *Id.* at 580–82, 589.[2]

In light of the court's holding in *American Capital II* that TFC's claim for damages regarding the net equity value of Transohio Savings was for "essential reliance" interest rather than restitution, and at the court's invitation, the FDIC amended its March 25, 1997 complaint also to assert an alternative claim for the net equity value of Transohio Savings under an "essential reliance" damage theory. *See* March 17, 2004 FDIC Amend. Compl. at 10; *see also American Capital II*, at 580–82, 589.[3] Under either theory, however, the crux of the FDIC's argument is that plaintiffs' claims, as a matter of law, must be dismissed because they are derivative. *See Daily Income Fund v. Fox*, 464 U.S. 523, 529, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) ("[T]he term 'derivative action,' ... has long been understood to apply only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court."); *see also* FDIC Mot. Re. Damages at 7–11, 15; FDIC's July 17, 2003

2. In addition, the court ruled that plaintiff TFC was entitled to recover damages for its "collateral reliance" interest in the amount of capital that was contributed to Transohio Savings to implement and effectuate the Assistance Agreement. *See American Capital II*, 59 Fed.Cl. at 582–84. The court further ruled, however, that as a matter of law, the Government is entitled to establish any loss that plaintiffs would have suffered if Transohio Savings had received the full benefit of $107.5 million of capital credit towards its regulatory net worth and complete amortization of $50 million in supervisory goodwill for the 25 year period in a straight line basis. *Id.* at 589.

The FDIC takes no position regarding this claim "as long as such an award would not affect Transohio Savings' right to recover on its claims or diminish damages otherwise recoverable by FDIC as successor to the rights of Transohio." FDIC Mot. Re. Damages at 2.

3. The court deems that the FDIC's March 17, 2004 complaint amends the FDIC's March 25, 1997 complaint, so that the FDIC has preserved its alleged claims under either a restitution theory or a reliance theory.

Response to Show Cause Order at 4. As the court's February 27, 2004 Memorandum Opinion held, TFC's action for breach of contract is not derivative because TFC was a signatory to the Assistance Agreement and TFC had complete corporate control over Transohio Savings. Transohio Savings did not own any of its stock on the date the Assistance Agreement was entered and therefore Transohio Savings is not a plaintiff in this case and cannot assert a cause of action for breach of contract, because it would have no standing. *See American Capital I,* 58 Fed.Cl. at 401; *American Capital II,* 59 Fed.Cl. at 580–82.

As an unanimous Supreme Court stated in *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.,* 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990):

> There is ... an exception to [the so-called shareholder standing] rule allowing a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated.

*Id.* In this case, TFC falls into that exception since it suffered direct injury as a result of the Government's breach of the Assistance Agreement to which TFC was a signatory and lost the value of its equity in Transohio Savings, which it proffered as partial consideration for the Assistance Agreement. *Id.* at 336–37, 110 S.Ct. 661. That injury arose separate from TFC's status as a mere shareholder.

In light of the fact that the FDIC now has protected any alleged interest it may have in this action, under either a restitution or reliance interest theory, as a matter of law and in the interest of justice all pending claims of the FDIC in this case are dismissed. In reaching this determination, the court wishes to acknowledge its appreciation for the substantive contribution of the FDIC and its dedicated efforts on behalf of public interest. Plaintiffs have indicated that they wish to proffer the testimony of a damages expert retained by the FDIC at the June 21, 2004 evidentiary hearing. For this reason, as the court previously ruled, the FDIC will be allowed to participate in the evidentiary hearing beginning on June 21, 2004, if it wishes, and any further briefing, as an amicus.

## CONCLUSION

For the aforegoing reasons, the FDIC's October 20, 2000 Motion for Summary Judgment on Liability is dismissed as moot and the FDIC's September 26, 2001 Motion for Extension of Time to Respond to Plaintiffs' Motion for Partial Summary Judgment with Respect to Damages is also dismissed as moot.

In addition, the FDIC's June 5, 2003 Motion for Partial Summary Judgment on Damages and Opposition to Shareholders' Motion for Partial Summary Judgment on Damages is denied.

The FDIC's March 25, 1997 and March 17, 2004 complaints are dismissed.

In order to facilitate the orderly consideration of this Memorandum Opinion and Order in the event of an appeal, the court will enter a final judgment regarding the FDIC claims at the same time a final judgment is entered regarding plaintiffs' claim for liability and damages, as well as all motions for reconsideration.

The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**